UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KHALFANI HOWARD, | No. ED CV 07-1523-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 14, 2007, seeking review of the Commissioner's denial of his application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 24, 2007, and February 9, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 6, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 5, 1981. [Administrative Record ("AR") at 64, 67.] He has an eleventh grade education and has completed one year of college. [AR at 78, 364-65.] Plaintiff has past relevant work experience as an aid for the blind and a security guard. [AR at 73, 109-16, 362.]

On August 12, 2005, plaintiff protectively filed his application for Supplemental Security Income payments, alleging that he has been unable to work since January 30, 2005, due to depression, anxiety, paranoia, suicidal tendencies, and memory loss.[1] [AR at 11, 16, 29-30, 64-67, 137.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 22, 28-34, 37-41.] A hearing was held on August 7, 2007, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 358-90.] A vocational expert and a medical expert also testified. [AR at 379-90.] On August 29, 2007, the ALJ determined that plaintiff was not disabled. [AR at 8-21.] Plaintiff requested review of the hearing decision. [AR at 6.] When the Appeals Council denied plaintiff's request for review on October 17, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Plaintiff also filed an application for Supplemental Security Income payments on May 20, 2003, which was denied on September 12, 2003. [AR at 11, 23, 42-45, 68-70, 82-85, 369-70.] In the August 29, 2007, decision, the ALJ indicated that the "previous decision is administratively final and there are no grounds for its reopening." [AR at 11.] Plaintiff does not challenge the ALJ's determination in this regard.

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since August 12, 2005, the date of the application. [AR at 13.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "a mood disorder, not otherwise specified (NOS), with some bipolar features; personality disorder; and substance abuse, marijuana, ongoing." [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 14.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to "perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to moderately complex tasks, up to four to five steps of instructions; object oriented work; no intensely emotionally charged interactions; no safety operations; and no operation of hazardous machinery. [Plaintiff] can have normal interaction with supervisors and is not prohibited from being around people. He can handle

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

being criticized or corrected by a supervisor on the job with a normal range of comments." [AR at 14-15.] At step four, the ALJ concluded that plaintiff was not capable of performing his past relevant work. [AR at 19.] At step five, the ALJ found, based on the vocational expert's testimony and use of the Medical-Vocational Rules (specifically Rule 204.00) as a framework, that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [AR at 20.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 20-21.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider the treating psychiatrist's opinion; (2) properly consider the treating clinician's opinion; (3) properly consider the lay witness statements; and (4) properly develop the record. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**LAY WITNESS STATEMENTS**

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), the Social Security Administration will, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see also Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . . . While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight."). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing

1  so. Dodrill, 12 F.3d at 919. Failure to consider lay testimony will be considered harmless error
2  only if "it [is] clear from the record that an ALJ's error was 'inconsequential to the ultimate
3  nondisability determination.'" See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)
4  (quoting Stout v. Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

5       On October 22, 2005, plaintiff's grandmother, Minnie Miller, completed a third-party
6  "function report" concerning, among other things, plaintiff's daily activities, social functioning, and
7  cognitive abilities. [AR at 117-24.] In the report, Ms. Miller indicated that she had known plaintiff
8  for twenty-four years and spent six hours a day with plaintiff. [AR at 117.] Ms. Miller noted that
9  plaintiff does not sleep much, has poor laundry habits, has to be reminded to take his medication,
10 "[does] not have the ability to concentrate or to make decisions and get along with others," is
11 unable to cope with money situations, has bad money management habits, has problems getting
12 along with family, does not have the ability to make it to his doctor's appointments on his own, and
13 needs someone to assist him with his responsibilities. [AR at 118-21.] Ms. Miller further noted
14 that plaintiff's condition affects his ability to talk, remember, complete tasks, concentrate,
15 understand, follow instructions, and get along with others. [AR at 122.] She indicated that plaintiff
16 cannot pay attention for a very long time, and does not follow written or spoken instructions well.
17 [AR at 122.] With respect to plaintiff's ability to get along with authority figures, Ms. Miller noted
18 that plaintiff "feels everyone is against him." [AR at 123.] She explained that plaintiff had been
19 fired or laid off from his job because he lacked the ability to comprehend what was expected of
20 him. [Id.] She also explained that plaintiff does not handle stress very well, has mood swings, and
21 gets irritable and depressed. [AR at 123.] As to plaintiff's ability to handle changes in routine, Ms.
22 Miller indicated that he has poor control of his mood and does not have the energy to cope. [AR
23 at 123.] She noted that plaintiff has attempted suicide. [Id.] Ms. Miller concluded that plaintiff has
24 demonstrated a diminished ability to think, concentrate, make decisions, and function. [AR at
25 124.] The ALJ discounted the lay witness statements of plaintiff's grandmother because "[t]he
26 claimant's family has not only the usual familial interest in his claim but also a financial one since
27 he lives at home with his parents." [AR at 18-19.]
28

The reasons provided by the ALJ for his rejection of the lay witness statements of plaintiff's grandmother are inadequate.[3] The mere fact that plaintiff's grandmother is a family member is not a sufficient reason to reject her statements. See Smolen, 80 F.3d at 1289 ("[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value[;] such lay witnesses will often be family members.") (citation omitted); see also Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999) (same); Johnson v. Astrue, 2008 WL 4553141, at *6 (C.D. Cal. Oct. 9, 2008) ("the Ninth Circuit has consistently held that bias cannot be presumed from a familial relationship"). Further, that plaintiff's family may have a financial interest in the outcome of the case is also not a sufficient reason to reject the statements of plaintiff's grandmother. The regulations clearly include "other relatives" as "other sources" who may provide evidence. See 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). The ALJ's rationale would effectively eliminate family members -- namely "other relatives" -- from the list of competent evidence-givers, and would render their statements, instead of being of "particular" value, of no value at all. See, e.g., Johnson, 2008 WL 4553141, at *6 ("The ALJ's reasoning that witnesses who live with or support a plaintiff are not credible for reasons of bias cannot be considered legally proper, since the same rationale could be used to reject lay witness testimony in almost every case."); Morgan v. Barnhart, 142 Fed.Appx. 716, 731 (4th Cir. 2005) ("[I]f family members' evidence *was* automatically worthless, it would be an odd exercise in futility to even allow them to fill out questionnaires and submit them into evidence.") (emphasis in original). There is no evidence here, let alone substantial evidence supported by the record, that plaintiff's grandmother was exaggerating her statements based on a financial motive.

---

[3]  Plaintiff in the Joint Stipulation addresses only the lay witness statements of plaintiff's grandmother. See Joint Stip. at 12-15. However, the Court notes that the ALJ in the decision collectively rejected the "statements from [plaintiff's] friends and relatives." [AR at 18.] The ALJ's disregard of the lay witness statements of plaintiff's friends and relatives amounted to a wholesale dismissal of the statements of the lay witnesses as a group, and thus does not qualify as a reason germane to plaintiff's grandmother. See Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

1  To the extent that the ALJ also rejected the lay witness statements of plaintiff's
2  grandmother based on his conclusion that plaintiff was "not entirely credible," such a rejection is
3  insufficient. [AR at 18-19.] Lay witnesses are competent to make "independent observations" of
4  a claimant's pain and other symptoms. See Dodrill, 12 F.3d at 919 ("[t]hat the ALJ dismissed all
5  the lay witness testimony solely because he found the claimant was not credible suggests he may
6  have been under the mistaken impression that lay witnesses can never make independent
7  observations of the claimant's pain and other symptoms."); see also Sprague, 812 F.2d at 1232
8  ("[d]escriptions by friends and family members in a position to observe a claimant's symptoms and
9  daily activities have routinely been treated as competent evidence."). Furthermore, an ALJ cannot
10 reject lay witness testimony simply by rejecting the credibility of a claimant.[4] See Schow v. Astrue,
11 272 Fed.Appx. 647, 653 (9th Cir. 2008) (ALJ failed to provide reasons for rejecting the lay
12 witnesses' observations that were "'germane to each witness'" by relying heavily on the adverse
13 credibility finding as to the claimant's testimony) (citation omitted); see also Michaels v. Massanari,
14 16 Fed.Appx. 751, 754-55 (9th Cir. 2001) (ALJ cannot properly discredit lay witness testimony
15 solely because the claimant lacks credibility); see, e.g., Turner v. Apfel, 1998 WL 289288, at *12

---

[4] Defendant contends that the ALJ provided clear and convincing reasons for rejecting plaintiff's subjective testimony as not entirely credible, and plaintiff does not object to the ALJ's assessment of plaintiff's credibility. Joint Stip. at 15. Defendant further appears to contend that the ALJ properly rejected the lay witness statements of plaintiff's grandmother based on consultative psychiatric evaluator Dr. Linda M. Smith's suggestion that plaintiff's mother was not very credible as a historian. Id. The reasons provided by the ALJ to reject plaintiff's credibility, however -- he testified at the hearing that his manner of slurred speech was normal, yet his doctor reported that his speech was normal; some of his problems on the mental status examination performed by Dr. Smith appeared to be deliberate; his mother was not very credible as a historian; he was unable to describe many of his alleged symptoms during the psychiatric consultative evaluation; he reported daily activities that were not limited to the extent that would be expected given his complaints of disabling symptoms and limitations; he attended college despite his allegations that he was unable to work because he could not get along with people, was unable to relate, and had an anger issue; and he wore a head scarf to the hearing and testified that he was a Muslim, but he was unable to readily name the sect to which he belonged, was unaware of the five practices of Islam, had no knowledge of Ramadan, and did not know the name of his religious leader [AR at 19] -- do not equally apply to the statements of plaintiff's grandmother as they are specific only to plaintiff and his mother. As such, the ALJ's reasons for rejecting plaintiff's credibility are not germane to, and could not be used to reject the statements of, plaintiff's grandmother.

(N.D. Cal. May 7, 1998) ("[t]he ALJ improperly rejected the lay witnesses' testimony because the ALJ judged the lay witnesses' credibility by her determination of [the claimant's] credibility.").

The ALJ's failure to properly reject the statements of plaintiff's grandmother -- who spent time with plaintiff on a daily basis and has known plaintiff for twenty-four years -- was error. See Dodrill, 12 F.3d at 919 (lay witnesses who have the opportunity to observe the claimant on a daily basis can often ascertain whether the claimant is suffering or merely malingering); see also Regennitter, 166 F.3d at 1298 (lay testimony "provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness") (citing Smolen, 80 F.3d at 1298); Smith v. Heckler, 735 F.2d 312, 313 (8th Cir. 1984) (if an ALJ rejects the subjective testimony of lay witnesses, he must specifically discuss the testimony and expressly make credibility determinations); Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988) (testimony from someone in a position to observe a claimant's symptoms and daily activities is "'competent evidence.'") (citation omitted). Moreover, the ALJ's failure in this instance does not constitute harmless error because the written statements of plaintiff's grandmother may have corroborated plaintiff's testimony[5] or provided additional information that could have impacted the ALJ's determination regarding the severity of plaintiff's impairments and how those impairments affect plaintiff's ability to work. See Booz v. Sec'y of Health and Human Serv., 734 F.2d 1378, 1381 (9th Cir. 1984) (holding that the test for determining whether an error is harmless is "whether there is a reasonable possibility that [the new evidence] would have changed the outcome of the present case"); see also Robbins, 466 F.3d at 885 (harmless error applies only when it is clear from the record that an ALJ's error is "'inconsequential to the ultimate nondisability determination'") (quoting Stout, 454 F.3d at 1055-56). Indeed, the report completed by Ms. Miller lends some support to plaintiff's testimony regarding his inability to work. [AR at 117-24.] Notably, in the report, Ms. Miller stated that plaintiff is unable to concentrate, make decisions, and get along with others. [AR at 120.] Ms. Miller noted that plaintiff needs assistance with his responsibilities, and lacks the ability to, among other things, remember, concentrate, understand, and follow

---

[5] As noted above, the ALJ found plaintiff's statements "not entirely credible." [AR at 18.]

instructions. [AR at 121-22.] Ms. Miller further noted that plaintiff "doesn't sleep much," has poor functional abilities, had attempted suicide, has mood swings, and is irritable and depressed. [AR at 118, 120, 123-24.] The Court cannot confidently conclude that no reasonable ALJ, if crediting the lay witness statements of plaintiff's grandmother, would have reached a different disability determination. See Ellison v. Astrue, 2008 WL 4425764, *5 (C.D. Cal. Sept. 29, 2008) ("'where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the [plaintiff], a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.") (citing Stout, 454 F.3d at 1056). Accordingly, remand is warranted.[6]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to properly consider the lay witness statements of plaintiff's grandmother. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: February 17, 2009                             /s/ - Paul L. Abrams
                                                      PAUL L. ABRAMS
                                            UNITED STATES MAGISTRATE JUDGE

---

[6] The lay witness statements of plaintiff's grandmother may also provide support for the opinion of treating psychiatrist Dr. Han V. Nguyen, as well as the findings in the adult clinical assessment and the diagnosis form completed by the treating clinician. [AR at 328-34, 356-57.] As such, the ALJ is directed on remand to also consider the impact of the lay witness statements on the other issues raised by plaintiff in the Joint Stipulation.